**UNITED STATES DISTRICT COURT FOR**

**THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., AS TRUSTEE GATO DEL SOL 2630 LAND TRUST, | ) ) ) ) | |
| *Plaintiff and Counter-Defendant,* | ) ) | |
| *v.* | ) ) | |
| U.S. BANK, NATIONAL ASSOCIATION, | ) ) | Civil No. SA-15-CV-370-OLG |
| *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* | ) ) ) | |
| *v.* | ) ) | |
| NGANG MU LOESCHER, AND NATIONS RELIABLE LENDING, L.L.C., | ) ) ) | |
| *Third-Party Defendants.* | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff's Motion to Alter or Amend Judgment, or in the Alternative, Motion to Clarify (docket no. 49) and Defendant's Motion to Alter or Amend Order (docket no. 51). For the reasons stated below, Plaintiff's and Defendant's motions are each GRANTED IN PART and DENIED IN PART as set forth in this Memorandum and Order, and this Memorandum and Order supersedes the Court's June 21, 2017 Order and Judgment (docket nos. 47 & 48), which are hereby VACATED.

**I.    BACKGROUND**

The present dispute concerns the parties' rights with respect to a property located at 2630 Gato Del Sol, San Antonio, Texas 78245 (the "Property"), and the factual and procedural background giving rise to the parties' claims and the present motions is complex.

## A. Transaction History and the Parties' Dispute

The Property at issue was purchased in June 2006 by Jon Bargas ("Bargas"). Bargas borrowed money to finance the purchase of the Property and granted Option One Mortgage Corporation ("Option One") a security interest in the property via a deed of trust. *See* docket no. 40-5. On June 27, 2006, Option One assigned the loan to LaSalle Bank, National Association ("LaSalle"), as trustee. *See* docket no. 40-1, Exhibit A, p. 2 ¶ 5. The loan records reflect that LaSalle Bank held its interest in the Property in a trust titled "Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass Through Certificates, Series 2007-RP3" (the "2007-RP3 Trust"). *See* docket nos. 40-1, Exhibit A-1, p. 10; 40-4, Exhibit A-3, pp. 46-65. On or around April 1, 2008, LaSalle foreclosed on the Property and purchased the Property at its own foreclosure sale (the "2008 Foreclosure Sale") for $154,610.33. *See* docket no. 40-7. The parties dispute whether the 2008 Foreclosure Sale was subsequently rescinded.[1] Later in 2008, LaSalle merged into Bank of America, N.A. ("BANA"). *See* docket no. 40-16, Exhibit M-6. Pursuant to a November 11, 2010 Purchase Agreement, U.S. Bank National Association ("U.S. Bank" or "Defendant") acquired substantially all of BANA's corporate trust business, and on June 21, 2011, U.S. Bank, as trustee, purportedly succeeded BANA as trustee for the 2007-RP3 Trust, among others. *See* docket no. 40-4, Exhibit A-4, pp. 67-85. On October 18, 2011, Bargas and his loan servicer allegedly entered into a Modification Agreement (the "Modification Agreement") purportedly reaffirming the lien on the Property but modifying certain terms from the original loan documents. *See* docket no. 40-8. On or around March 25, 2014, BANA

---

[1] Defendant U.S. Bank claims the 2008 Foreclosure Sale was rescinded and the lien on the Property therefore survived. *See* docket no. 40 p. 4. Plaintiff Kingman contests the rescission and asserts the 2008 Foreclosure Sale extinguished the lien. *See* docket no. 41 ¶¶ 21-28. The alleged rescission is discussed in more detail in Section III.A.1.a of this Order, *infra.*

purportedly assigned certain rights to the Property to Defendant U.S. Bank, as trustee, through a recorded Transfer of Lien (the "Transfer of Lien"). *See* docket no. 40-11.[2]

In addition to the interests that U.S. Bank and/or its predecessors allegedly have in the Property, the Property is also subject to covenants, restrictions and liens issued in favor of the San Antonio Champions Park Homeowners Association (the "HOA"). *See* docket no. 40-9. The HOA's rights and interests related to the Property included a lien to secure payment of assessment or dues owed to the HOA by residents. *Id.* at p. 25 § 1. However, the declaration providing for the HOA's lien on the Property expressly states that the HOA's lien "shall be subordinate to the lien of any mortgage or mortgages now or hereinafter placed upon the [Property] subject to assessment." *Id.* at p. 29 § 11.

On November 6, 2014, the HOA provided notice of foreclosure on the Property to LaSalle as a result of unpaid association dues. *See* docket no. 40-12 p. 3 ¶ I.E. On December 2, 2014, Plaintiff Kingman Holdings, L.L.C. ("Kingman" or "Plaintiff") purchased the Property at the HOA foreclosure sale (the "HOA Foreclosure Sale") for $6,800.00 and obtained a trustee's deed. *See* docket no. 40-12. That trustee's deed identified LaSalle as the Owner at the time of the HOA Foreclosure Sale. *Id.* at I.A.

Defendant U.S. Bank alleges that it never received notice of the HOA's foreclosure prior to the HOA Foreclosure Sale. *See* docket no. 22 p. 3. In any event, U.S. Bank alleges that Bargas again defaulted on his mortgage (*see id.*), and in a March 16, 2015 notice of foreclosure, U.S. Bank allegedly indicated its intent to sell the Property at its own foreclosure sale (*see* docket no. 1-1 p. 15 ¶ 17). On April 7, 2015, Plaintiff Kingman filed this suit in the 288th Judicial District Court of Bexar County, Texas against U.S. Bank, trying to remove the cloud to its title allegedly

---

[2] The parties dispute the nature of interests conveyed—if any—by U.S. Bank's succession, as trustee, and/or the Transfer of Lien. *See* Section III.A.1, *infra.*

created by U.S. Bank's interest. *See* docket no. 1-1 pp. 15-16 ¶¶ 24-25. In its petition, Plaintiff asserted that U.S. Bank "has no authority to sale [sic] the property and has no interest in the Property." *Id.* at p. 15 ¶ 18. On the same day it filed its petition, Plaintiff also filed a lis pendens on the Property providing notice of the lawsuit concerning the parties' respective interests in the Property.[3] *See* docket no. 40-14. U.S. Bank filed its answer on April 30, 2015, and on May 8, 2015 the case was removed to this Court. *See* docket no. 1-1.

While the initial litigation was ongoing, Defendant U.S. Bank tried to exercise its statutory redemption rights with respect to the Property pursuant to Texas Property Code § 209.011.[4] Counsel for Defendant contacted Plaintiff on April 13, 2015, advising Plaintiff that U.S. Bank was a "lienholder of record" on the Property and therefore requesting that Plaintiff advise Defendant of the amount necessary for its statutory redemption payment. *See* docket no. 40-15, Exhibit L-1. On May 22, 2015, counsel for Defendant again requested redemption amounts from Plaintiff and the HOA, and in doing so, this time identified U.S. Bank as the "successor to LaSalle Bank, N.A. Trustee's interest" in the Property.[5] *See* docket no. 40-16, Exhibits M-1 & M-2. On June 3, 2015, Defendant's counsel again requested redemption amounts from Kingman. *See id.*, Exhibit M-3. On June 24, 2015, Kingman's counsel transmitted a letter dated June 4, 2015, referring to Defendant as a "purported successor in interest to LaSalle Bank" and stating that it was "unclear at this time whether your client claims to be entitled to redeem

---

[3] Defendant U.S. Bank filed its own Notice of Lis Pendens on the Property on June 29, 2015. *See* docket no. 40-18.

[4] As discussed in more detail later in this Order, Texas Property Code § 209.011(b) provides that a Property's "owner" or a "lienholder of record" may make redemption payments to "redeem" the Property from a purchaser at a homeowners association foreclosure sale. *See* Section III.A.1.

[5] The HOA responded to Defendant with the requested redemption amounts on June 15, 2015, and Defendant tendered payment of that amount on June 24, 2015. Docket no. 40-16, Exhibits M-4 & M-5.

the property in the capacity as a lien holder or a lot owner." *Id.*, Exhibit M-9. Plaintiff's counsel stated that Kingman contended that "all liens have been extinguished by foreclosure sales" and asked for U.S. Bank to "provide proof of chain of title" if U.S. Bank "claims to be the lot owner." *Id.* Plaintiff did not provide Defendant with redemption amounts in its letter dated June 4, 2015, nor has Plaintiff done so since. *See id.*, Exhibit M ¶ 8 & Exhibit M-9. On June 26, 2015, U.S. Bank filed its amended answer and counterclaim, asserting—among other things— that Kingman had violated Texas Property Code § 209.011 by failing to provide U.S. Bank with the statutory redemption amounts for payment. *See* docket no. 8 pp. 11-12 ¶¶ 18-26.

U.S. Bank also alleges that around that same time, Plaintiff began engaging in a series of transactions divesting itself of title to the Property. *See* docket no. 40 p. 2. On June 25, 2015, Kingman conveyed the Property to Ohio Gravy Biscuit, Inc. ("Ohio Gravy"). *See* docket no. 40-17. The record indicates that Kingman's sole member and officer—Mr. Mark Disanti—is also the sole member and officer of Ohio Gravy (*see* docket no. 40-16, Exhibit M-7 at 8:3-6 & 57:10-13), and Mr. Disanti was aware that U.S. Bank was claiming a redemption right at the time of the transaction (*see id.* at 52:11-17). On December 17, 2015, Kingman purported to execute a second conveyance of the Property, this time to Mimas Holdings, L.L.C. ("Mimas").[6] *See* docket no. 40-19. On February 23, 2016, Ohio Gravy executed a deed purportedly conveying its interest in the Property to Mimas. *See* docket no. 40-20. Finally, on March 4, 2016, Ngang Mu Loescher ("Loescher") ultimately purchased the Property from Mimas for $162,011.00 with financing provided by Nations Reliable Lending, LLC ("NRL"). *See* docket nos. 40-21 & 40-22. Upon Mimas's sale of the Property, Kingman or Ohio Gravy received approximately $100,000 from

---

[6] Kingman admits that this deed to Mimas was a mistake. *See* docket no. 40-16, Exhibit M-7 at 65:4-21.

Mimas as payment for the Property. *See* docket no. 40-16, Exhibit M-7 at 61:8-23 & 65:22-66:17.

On May 9, 2016, U.S Bank filed its amended counterclaims against Kingman, adding Loescher and NRL as Third-Party Defendants. Third-Party Defendants Loescher and NRL did not respond and are in default. *See* docket nos. 33 & 34. Defendant U.S. Bank's counterclaims seek—among other things—statutory redemption of the Property under § 209.011, "removal of the clouds on [U.S. Bank's] interest," and the voidance of any conveyances alienating the Property from Kingman. *See* docket no. 22 ¶¶ 37-46, 51-56, 66-68. Plaintiff Kingman, on the other hand, claims that U.S. Bank does not have any rights to the Property because it has not provided proof that it was a lienholder or a person holding record title. Docket no. 41 p. 6.

## B. The Court's Prior Summary Judgment Order

On March 21, 2017, U.S. Bank moved for summary judgment to enforce its statutory redemption rights, to quiet title, and to seek declaratory relief invalidating subsequent conveyances made by Plaintiff. *See* docket no. 40. Defendant also sought summary judgment on Kingman's claims against U.S. Bank. *Id.* On June 21, 2017, the Court entered an Order and Judgment (the "Prior Order") granting Defendant's motion in part. Docket nos. 47 & 48. In the Prior Order, the Court found that U.S. Bank had not conclusively demonstrated that the 2008 Foreclosure Sale was rescinded and therefore it had not established that it was a lienholder of record. Docket no. 47 pp. 5-7. However, the Court found that Defendant had an ownership interest in the Property via the March 24, 2014 Transfer of Lien between BANA and U.S. Bank. *Id.* at pp. 7-8. Accordingly, the Court determined that U.S. Bank was the "rightful owner" of the Property "subject to Plaintiff's lien," and therefore, U.S. Bank was entitled to exercise statutory redemption rights. *Id.* at pp. 8, 16. Further, the Court (i) concluded that U.S. Bank's redemption

period had not yet expired because U.S. Bank had thus far complied with its requirements for redemption, and (ii) ordered Kingman to provide the redemption amounts to U.S. Bank pursuant to Texas Property Code § 209.011. *Id.* at pp. 9-11, 18. Finally, the Court determined that a trespass-to-try-title action—rather than a declaratory judgment—was the proper way for Defendant to seek invalidation of Kingman's subsequent conveyances. *Id.* at p. 17. Because U.S. Bank had not moved for summary judgment on its trespass-to-try-title claim, the Court declined to invalidate the subsequent conveyances of the Property. *Id.*

## C. The Parties' Motions to Alter, Amend, or Clarify

The parties have filed the present motions seeking to alter, amend and/or clarify the Court's Prior Order. Plaintiff Kingman asks this Court to amend its ruling regarding Defendant's entitlement to exercise the right of redemption over the Property. Docket no. 49 ¶ 11-12. Plaintiff claims the Court's conclusion that Defendant is entitled to exercise the right of redemption is solely based on the Court's finding that BANA transferred to Defendant "all rights . . . held in the property" via the Transfer of Lien. *Id.* Plaintiff further argues that said document only could have transferred any interest in the instrument itself (which Plaintiff argues was *no interest* if the lien had been extinguished), rather than any other ownership interest BANA may have held in the Property. Docket no. 49 ¶ 13. Ultimately, Plaintiff again urges the Court to hold that Defendant is neither the lot owner nor a lienholder, and therefore, that Defendant is not entitled to the statutory right of redemption. Docket no. 49 ¶ 16.

U.S. Bank contends that the Court was correct in its prior determination that the Transfer of Lien conveyed rights, but also responds to Plaintiff's argument by noting that it had an "ownership" interest in the Property as successor trustee even in the event the Court concludes that the Transfer of Lien could not have conveyed ownership. Docket no. 50 pp. 5-6. In its own

Motion to Alter or Amend, U.S. Bank asks this Court to hold that its quiet-title claim is the appropriate legal vehicle to set aside subsequent conveyances of the Property. Docket no. 51 pp. 5-6. Defendant argues it does not seek to obtain title or possession at the present but will do so in the future through the redemption process. *Id.* Assuming Defendant's quiet title claim is appropriate under the circumstances, Defendant asks the Court to invalidate the subsequent conveyances based on the transfer prohibition outlined in Texas Property Code § 209.011(f). U.S. Bank further requests that the Court issue *final* judgment in its favor. Docket no. 51 p. 9.

Finally, both Plaintiff and Defendant agree that the Court's Prior Order needs clarification with respect to the parties' *present* interests in the Property. Plaintiff notes that the Prior Order appears to suggest that both Kingman and U.S. Bank are present owners (*see* docket no. 49 ¶ 18), and U.S. Bank agrees that its own present interest—even if the Prior Order is otherwise correct—is not ownership, but merely the right "to re-acquire an ownership interest through redemption" (*see* docket nos. 50 p. 7 & 51 p. 7). Further, both parties agree that Plaintiff is not a lienholder on the Property. Docket nos. 49 ¶ 9 & 50 p. 7. Therefore, both parties note that the Court's Prior Order needs modification to the extent it identified Defendant as the Property's "rightful owner . . . subject to Plaintiff's lien." Docket nos. 49 ¶ 19 & 50 p. 7.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59(e), there are three grounds for altering or amending a judgment: "(1) an intervening change in the controlling law, (2) newly discovered evidence, or (3) manifest error of law or fact." *Doss v. Morris*, No. SA-11-CV-00116-DAE, 2013 WL 12291910, at *2 (W.D. Tex. Nov. 1, 2013); *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). "The remedy is so extraordinary that the standard under Rule 59(e) favors denial of motions to alter or amend a judgment." *Reyes v. Manor Indep.*

*Sch. Dist.*, No. A-14-CA-00469-SS, 2016 WL 1601219, at *1 (W.D. Tex. Apr. 20, 2016) (internal quotations omitted); *Sanders v. Bell Helicopter Textron, Inc.*, No. 4:04-cv-254-Y, 2005 WL 6090228, at *1 (N.D. Tex. Oct. 25, 2005). "Although the decision to grant a motion to reconsider is within the discretion of the district court, the decision should be made in light of two important judicial imperatives: (1) the need to bring litigation to an end, and (2) the need to render just decisions on the basis of all the facts." *Reyes*, 2016 WL 1601219, at *1. However, with respect to interlocutory orders—such as orders for partial summary judgment[7]—the trial court is "free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), abrogated by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). In making the determination of whether a genuine issue of material fact exists, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 412 (5th Cir. 2003).

In a summary judgment proceeding, the movant bears the burden of identifying those portions of the record it believes demonstrate the "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). However, the movant need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d

---

[7] *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976); *Halliburton Co. Benefits Comm. v. Graves*, 191 Fed. Appx. 248, 250 (5th Cir. 2006).

536, 540 (5th Cir. 2005). The moving party may meet its burden "by pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the movant satisfies its burden, the non-moving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted); *see also Lincoln Gen. Ins. Co.*, 401 F.3d at 349. At the summary judgment stage, the non-movant cannot meet its burden with "conclusory allegations" or "unsubstantiated assertions." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. ANALYSIS

### A. The Parties' Interests in the Property

Plaintiff seeks to amend the Prior Order to the extent it concluded that the Transfer of Lien from BANA to U.S. Bank resulted in U.S. Bank having an ownership interest in the

Property at the time of the HOA Foreclosure Sale. Docket no. 49 ¶¶ 12-15. According to Plaintiff, because U.S. Bank was neither an owner nor a lienholder of record at the time of the HOA Foreclosure Sale, U.S. Bank had (and has) no right to redemption under § 209.011. *Id.* at ¶ 16. Both parties also request that certain portions of the Prior Order describing the parties' respective interests in the Property be clarified. *See* docket nos. 49 ¶ 19-20 & 50 p. 7.

1. <u>Defendant U.S. Bank's Interest in the Property and Statutory Right of Redemption</u>

Whether Defendant has a right to redeem the Property depends on the interest Defendant held with respect to the Property at the time of the HOA Foreclosure Sale. Pursuant to Texas Property Code § 209.011(b), a property's "owner" or "a lienholder of record" may redeem the property from the purchaser at a homeowners association foreclosure sale. In this case, Defendant U.S. Bank's status with respect to the Property at the time of the HOA Foreclosure Sale in 2014 largely turns on the factual circumstances related to a 2008 Foreclosure Sale and alleged rescission of that sale. In order for Defendant to be a "lienholder of record" in 2014, the 2008 Foreclosure Sale must have been rescinded. If the 2008 Foreclosure Sale was not rescinded, the lien was terminated when equitable and real title merged after LaSalle purchased the Property in 2008.

a. *Dispute as to Rescission of 2008 Foreclosure Sale*

In its summary judgment motion, Defendant U.S. Bank states that the 2008 Foreclosure Sale was rescinded and that the deed of trust was reinstated. *See* docket no. 40 p. 4. In response, Plaintiff Kingman contends that the 2008 Foreclosure Sale was never rescinded and notes that there is no evidence of rescission in the county records. *See* docket no. 41 ¶¶ 21-28.

Plaintiff first argues the alleged rescission is void because it failed to comply with Texas Property Code § 51.016. *Id.* at ¶¶ 23-26. Section 51.016 establishes the requirements for rescission of a non-judicial foreclosure sale, and requires, among other things, that a notice of

rescission be filed in the county deed records. *See* Tex. Prop. Code. § 51.016(c). However, as this Court stated in its Prior Order:

> Section 2 of the bill specifically states '[t]he changes in law made by this Act apply only to a foreclosure sale that occurs on or after the effective date of this Act. A foreclosure sale that occurred before the effective date of this Act is governed by the law applicable to the foreclosure sale immediately before the effective date of this Act, and that law is continued in effect for that.'

Docket no. 47 p. 5 (quoting Tex. Sess. Law Serv. Ch. 551 (H.B. 2066)). Thus, because the statute was passed in 2015, it is clear § 51.016 is not applicable to the alleged rescission at issue, which purportedly occurred prior to the 2014 HOA Foreclosure Sale.

With respect to the law regarding foreclosure sale rescission prior to the enactment of § 51.016, the Court's Prior Order said the following:

> In *Gaydos v. Bank of America*, the court examined the applicable law prior to the enactment of the statute. In *Gaydos* the plaintiff made a similar argument claiming the rescission was ineffective despite mutual agreement. However, the court concluded the rescission was effective because all parties were in agreement. *Gaydos v. Bank of Am., N.A.*, No. 02-14-00221-CV, 2015 WL 1544014, at *3 (Tex. App.—[Ft. Worth] Apr. 2, 2015, [pet. denied]) (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 182 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008) for proposition that parties may agree to rescind the foreclosure sale). Thus, prior to the enactment of § 51.016, parties could rescind a foreclosure by mutual agreement.

Docket no. 47 p. 6. Neither U.S. Bank nor Kingman has contested that portion of the Court's Prior Order, and the Court again concludes that U.S. Bank may at least assert that the 2008 Foreclosure Sale was rescinded by mutual agreement.

Notwithstanding the availability of that argument for U.S. Bank, however, Kingman also contends that the summary judgment evidence does not demonstrate that the 2008 Foreclosure Sale was actually rescinded. Docket no. 41 ¶¶ 22, 26-27. In its Prior Order, the Court agreed with Kingman and determined that U.S. Bank had not done enough to demonstrate rescission by prior mutual agreement at the summary judgment stage. *See* docket no. 47 pp. 5-8. After reviewing the

record again, the Court continues to believe that there is uncertainty regarding whether the 2008 Foreclosure Sale was actually rescinded.

Defendant's Motion for Summary Judgement cites to "Exhibit A" generally for the proposition that the sale was in fact rescinded by agreement. *See* docket no. 40 p. 4. Exhibit A contains a variety of documents relating to the case, but Defendant has not specifically referenced—and the Court cannot find—a specific agreement to rescind the 2008 Foreclosure Sale. Instead, the Court can only find an affidavit of a bank representative stating that the 2008 Foreclosure Sale was rescinded without providing any further substantiation. *See* docket no. 40-1, Exhibit A, p. 2 ¶ 8. Defendant further claims that the rescission is evidenced by the 2011 Modification Agreement executed by Bargas and his loan servicer, in which the parties "reaffirmed" the loan and mortgage. *See* docket nos. 40 p. 5; 40-8 ¶¶ 4.E-F. Defendant provided the Court with a copy of said Modification Agreement, and the agreement indicates, in part, that "[t]here ha[d] been no change in the ownership of the Property since [Bargas] signed the Loan Documents." *See* docket no. 40-8 ¶ 1.C. The Court agrees with U.S. Bank that it would be odd—if nothing else—for Bargas and his lender to "reaffirm" the existence of a loan agreement that had been extinguished three years earlier.[8] Finally, the Court notes that in U.S. Bank's initial letter requesting redemption amounts, counsel for Defendant identified his client as "a lienholder of record" on the Property. Docket no. 40-15, Exhibit L-1.

On the other hand, other record evidence calls into question Defendant's theory of rescission. As an initial matter, U.S. Bank's filings are not even clear as to whether it was

---

[8] Based on the timing of U.S. Bank's own attempted foreclosure described in U.S. Bank's counterclaims, it appears Bargas continued to make mortgage payments up until 2014 or 2015. *See* docket no. 22 p. 3 (alleging that "Bargas defaulted on the loan again" and thus "[a] foreclosure sale was set for March 2015"). However, the Court cannot find record evidence demonstrating those payments were made, and this Court's conclusions do not rely on the existence or non-existence of those payments.

LaSalle or BANA that purportedly rescinded the 2008 Foreclosure Sale.[9] Moreover, the Bexar County records reflect that LaSalle purchased the Property in 2008, and there is no evidence any rescission agreement was ever filed in the Bexar County records.[10] Accordingly, the public records would suggest that the deed of trust lien was extinguished by virtue of the 2008 Foreclosure Sale. Unsurprisingly, the 2014 HOA Foreclosure Sale deed lists U.S. Bank's predecessor, LaSalle, as the "Owner" of the Property (*see* docket no. 40-12), as did the HOA's "Notice of Assessment Lien" on the Property (*see* docket no. 40-10).

That mixed record and conflicting evidence does not permit the Court at this stage to conclusively determine whether the 2008 Foreclosure Sale was rescinded. For that reason, it is not clear at this stage whether Defendant's interest in the Property was that of an "owner" or whether Defendant's interest in the Property was that of a "lienholder of record." But that uncertainty does not necessarily preclude summary judgment with respect to Defendant's present right to redemption, as *both* owners and lienholders have a statutory right to redemption under Texas Property Code § 209.011(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987). Thus, "only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted." *Imme v. Fed. Express Corp.*, 193 F. Supp. 2d 519, 523 (D. Conn. 2002) (emphasis in original).

For the reasons discussed below, the record *does* conclusively demonstrate that U.S. Bank was *either* an "owner" *or* a "lienholder of record" at the time of the 2014 HOA

---

[9] *Compare* docket no. 40 ("LaSalle Bank rescinded the 2008 Foreclosure Sale") *with* docket no. 40-1, Exhibit A, p. 2 ¶ 8 ("[BANA] as successor by merger to LaSalle Bank rescinded the foreclosure sale").

[10] However, as discussed above, doing so was not necessarily required by law at the time.

Foreclosure Sale. Accordingly, the record demonstrates that Defendant has a right of redemption under Texas Property Code § 209.011, regardless of whether or not the 2008 Foreclosure Sale was rescinded.

### b. *If Rescission Did Not Occur—U.S. Bank's Redemption Right Due to its Status as an Owner*

"Owners" of the Property are entitled to a right of redemption after a homeowners association sale under Texas Property Code § 209.011(b). In the event that rescission of the 2008 Foreclosure Sale did not occur, the Court finds that U.S. Bank held record title at the time of the HOA Foreclosure Sale as the successor trustee of the 2007-RP3 Trust.

In its Prior Order, the Court determined that Defendant U.S. Bank had not necessarily demonstrated that the 2008 Foreclosure Sale was rescinded. Docket no. 47 pp. 6-7. Notwithstanding that fact, the Court found that U.S. Bank had an ownership interest at the time of the HOA Foreclosure Sale based on the Transfer of Lien in which BANA purportedly transferred U.S. Bank "all of the right, title and interest owned or held by said Assignor in and to the following instrument." *Id.* at p. 8. The Court further concluded that (i) BANA, which had come to hold title to the Property through its merger with LaSalle, "transferred all rights it held in the property to U.S. Bank" through the Transfer of Lien, and, therefore, (ii) U.S. Bank held "title to the Property." *Id.*

Plaintiff notes that the Court's prior conclusions may be inconsistent. *See* docket no. 49 ¶ 15. In the event the 2008 Foreclosure Sale was not rescinded, the deed of trust lien was extinguished at that time. If true, "the right, title and interest owned or held by said Assignor in and to *the following instrument*"—i.e., the trust lien—would be nothing. Docket no. 40-11 (emphasis added). Accordingly, if the 2008 Foreclosure Sale was not rescinded, Plaintiff asserts that the Transfer of Lien could not have been the basis for U.S. Bank succeeding LaSalle's or

BANA's interest as an owner. The Court agrees with Kingman on this point, and to the extent the Court previously concluded that the Transfer of Lien conveyed ownership rights from BANA to U.S. Bank, the Court's determination should be amended.

However, that reversal does not end the Court's examination, and after further analysis, the Court concludes that Defendant still has a right of redemption as an "owner" under § 209.011 in the event the 2008 Foreclosure Sale was never rescinded. As a result of the 2008 Foreclosure Sale, LaSalle, acting as trustee for the 2007-RP3 Trust, obtained a Substitute Trustee's Deed and title to the property. *See* docket no. 40-7. On October 17, 2008, LaSalle Bank merged with, and subsequently operated as part of, BANA. *See* docket no. 40-16, Exhibit M-6. Consequently, as a result of the merger, BANA succeeded LaSalle as trustee of the 2007-RP3 Trust. *See* docket no. 40-1, Exhibit A, p. 2 ¶ 8; docket no. 40-8 p. 7. Finally, pursuant to a November 11, 2010 purchase agreement, U.S. Bank acquired substantially all of BANA's corporate trust business. *See* docket no. 40-4, Exhibit A-4, p. 67 ¶ 3. Included in the acquired assets was BANA's interest in the 2007-RP3 Trust, and as a result, as of June 21, 2011, U.S. Bank succeeded to BANA's interest in the Property. *See id.* at pp. 67, 81. It was through this merger and acquisition of assets that U.S. Bank, as trustee, held ownership and redemption rights to the Property as of the date of the HOA Foreclosure Sale.

Plaintiff agrees that LaSalle may have held record title following the 2008 Foreclosure Sale (*see* docket no. 41 ¶ 29), but claims that U.S. Bank may not "leap to the conclusion that it succeeded LaSalle" because "there is no recording of any such conveyance of title from LaSalle or BANA to US Bank."[11] *Id.* As a threshold matter, Plaintiff cites no law for the proposition that a separate recording document is needed in order for a successor trustee to obtain the interests of

---

[11] Plaintiff does not appear to make an issue of the fact that there was no separate recording document for the conveyance by merger that occurred between LaSalle and BANA.

its predecessor, nor does Plaintiff identify law for its assertion that a successor trustee may not hold title recorded in its predecessor's name.[12] Indeed, Texas law does not require a successor trustee to record a deed or conveyance instrument to obtain title to trust property. Texas Property Code § 113.084 states that:

> Unless otherwise provided in the trust instrument or by order of the court appointing a successor trustee, the successor trustee has the rights, powers, authority, discretion, and title to trust property conferred on the trustee.

*Id.*[13] Unsurprisingly, and consistent with that principle, the 2007-RP3 Trust expressly provides that a successor trustee will succeed its predecessor's rights "without any further act, deed or conveyance." Docket no. 40-2, Exhibit A-2, p. 126 § 8.08(a). Similarly, the trust instrument states that "any corporation or national banking association succeeding to the business of the Trustee, shall be the successor of the Trustee . . . without the execution or filing of any paper or any further act on the part of any of the parties hereto." *Id.* at p. 126 § 8.09. Finally, the Substitute Trustee's Deed recorded as a result of the 2008 Foreclosure Sale specifically "grant[ed], s[old] and convey[ed]" the Property to LaSalle and to its "successors or assigns forever." Docket no. 40-7.

Contrary to Plaintiff's assertions, the Court is not just "simply believ[ing]" U.S. Bank's contention that it succeeded LaSalle's and BANA's interests. *See* docket no. 41 ¶ 33. In the event the 2008 Foreclosure Sale was not rescinded, Defendant has identified evidence showing that it

---

[12] Chapter 209 of the Texas Property Code defines "owner" to be "a person who holds record title to property in a residential subdivision and includes the personal representative of a person who holds record title to property in a residential subdivision." *Id.* at § 209.002. Accordingly, the Texas Property Code seemingly recognizes that an "owner" for the purposes of Chapter 209 may be a party other than the one listed on the title recording document in the public records.

[13] Defendant notes that the 2007-RP3 Trust states that it is governed by New York law. *See* Docket no. 40-2, Exhibit A-2, p. 140 at § 11.04. In any event, N.Y. law is consistent with Texas law on the topic, as N.Y. Est. Powers & Trusts Law § 11-1-1(b)(12) states that a successor trustee "succeed[s] to all of the powers, duties and discretion of the original fiduciary, with respect to the . . . trust, as were given to the original fiduciary."

was the Property's "owner" at the time of the HOA Foreclosure Sale, and Plaintiff has failed to identify facts rebutting that evidence. Specifically, Defendant has pointed to record evidence indicating that: (1) LaSalle held an interest in the Property, as trustee, for the 2007-RP3 Trust following the 2008 Foreclosure Sale (*see* docket nos. 40-1, Exhibit A, p. 2 ¶ 7; 40-7); (2) LaSalle merged with BANA (*see* docket no. 40-16, Exhibit M-6); and (3) U.S. Bank acquired BANA's corporate trust assets, including the 2007-RP3 Trust (*see* docket no. 40-4, Exhibit A-4, pp. 67, 81). In sum, U.S. Bank has pointed to sufficient evidence demonstrating that, as trustee, it succeeded to LaSalle's interest in the Property, and Kingman has failed to identify the specific facts necessary to create a genuine dispute as to that issue.[14] *See Little*, 37 F.3d at 1075 (citations omitted) (noting that non-movant's burden is not satisfied by "some metaphysical doubt as to the material facts").

Accordingly, the Court concludes that—in the event the 2008 Foreclosure Sale was not rescinded—U.S. Bank had redemption rights as an "owner" at the time of the HOA Foreclosure Sale, and those rights originated not from the Transfer of Lien, but from the interests and rights it acquired as successor trustee of the 2007-RP3 Trust.[15]

---

[14] Plaintiff attempts to create doubt with respect to U.S. Bank's interest by noting that certain conveyance documents refer to the "2007-RP3 Trust", whereas others refer to the "RAAC Series 2007-RP3 Trust" or the trust's long-form title, "Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP3." *See* docket no. 41 ¶ 29 n.27, ¶ 32. Therefore, according to Plaintiff, the Court is being asked "to assume these are all the same trust." *Id.* at ¶ 29 n.27. Plaintiff's argument ignores that Defendant has provided an affidavit indicating that each name references the 2007-RP3 Trust. *See* docket no. 40-1, Exhibit A, p. 2 ¶¶ 6-7, 9. Moreover, other record evidence tends to substantiate Defendant's affidavit. *See, e.g.*, docket no. 40-1, Exhibit A-2, p. 7 (abbreviating long-form title of trust as "2007-RP3"); *id.* at Exhibit A-2, p. 13 (providing that mail related to the trust be sent with attention to "RAAC, Series 2007-RP3"). In light of such support in the record, Plaintiff has not created a genuine issue of fact regarding that issue, and Plaintiff's unsubstantiated distrust does not satisfy its burden at the summary judgment stage.

[15] Plaintiff notes that the Court's Prior Order did not address whether Defendant was owner of the Property as successor trustee. Docket no. 54 ¶ 8 n.9. Plaintiff is incorrect, however, in

c. *If Rescission Occurred—U.S. Bank's Redemption Right Due to its Status as a Lienholder*

Lienholders are also entitled to exercise redemption rights after a homeowners association foreclosure sale under Texas Property Code § 209.011(b). In the event the 2008 Foreclosure Sale was in fact rescinded, the Court finds that U.S. Bank held a lien on the Property at the time of the HOA Foreclosure Sale as the successor trustee to the interests held by LaSalle and due to the 2014 Transfer of Lien.

In the event there was an unrecorded mutual agreement to rescind the 2008 Foreclosure Sale (that has not been provided to the Court) as Defendant's affidavit asserts and the Modification Agreement and parties' subsequent conduct might suggest,[16] LaSalle's and/or BANA's lien[17] on the Property would have survived following the rescission of the 2008 Foreclosure Sale. At that point, LaSalle's and/or BANA's interest in the Property would have been that of a "lienholder of record," rather than that of the "owner."

As discussed above, U.S. Bank eventually became successor to LaSalle's and BANA's interests in the Property as trustee, via LaSalle's merger with BANA and U.S. Bank's subsequent acquisition of BANA's corporate trust assets. *See* Sections I.A. & III.A.1.b, *supra*. Additionally,

---

suggesting that such a theory is not appropriately raised at this stage because "Plaintiff has not asked the Court to address [Defendant's successor trustee argument] in its Motion to Alter or Amend." *Id.* U.S. Bank's alternative theory as to why it has a superior interest in the Property was asserted in the original summary judgment papers, Plaintiff was provided with ample opportunity to try to refute such an argument, and Plaintiff in fact addressed the argument in its briefing. Docket no. 41 ¶¶ 29-35. Moreover, Kingman has asked the Court to reconsider its prior conclusion that U.S. Bank holds an interest in the Property superior to that of Kingman, and U.S. Bank's alternative argument is directly aimed at explaining why the Court's prior conclusion need not be amended.

[16] *See* Section III.A.1.a, *supra*.

[17] As discussed above, the filings do not clearly indicate whether it was LaSalle or BANA that purportedly rescinded the 2008 Foreclosure Sale. *See* Section III.A.1.a n.9, *supra*. However, the Court's conclusion—in the event the 2008 Foreclosure Sale was rescinded—does not depend on whether it was LaSalle or BANA that formally rescinded the sale.

BANA specifically transferred its lienholder interest in the Property to "U.S. Bank, as Trustee, Successor in Interest to [BANA]," in the January 23, 2014 Transfer of Lien. *See* docket no. 40-11. To the extent the lien on the Property survived the 2008 Foreclosure Sale, the record clearly indicates that as a result of Defendant's successor interest and the Transfer of Lien, U.S. Bank, as trustee, was the "lienholder of record" on the Property as of the date of the 2014 HOA Foreclosure Sale. Notably, Plaintiff has not identified record evidence demonstrating that U.S. Bank would not be a lienholder in the event the 2008 Foreclosure Sale was rescinded, but rather solely argues that there is insufficient evidence to conclude that rescission occurred.

Thus, the Court finds that—in the event the 2008 Foreclosure Sale was in fact rescinded—U.S. Bank had redemption rights as a "lienholder of record" at the time of the HOA Foreclosure Sale.

### d. *Defendant U.S. Bank's Compliance with Section 209*

After concluding that Defendant U.S. Bank held redemption rights on the Property following the HOA Foreclosure Sale as either an "owner" or "lienholder of record," the Court now must examine whether Defendant is *still* entitled to redeem the Property. Relevant to that inquiry are the determinations of whether U.S. Bank has thus far complied with its requirements for redemption and whether the redemption window remains open. Plaintiff Kingman did not directly respond to Defendant's arguments regarding those topics, except to note that such questions are moot if Kingman's own argument—asserting that U.S. Bank has no right to redemption—is successful. *See* docket nos. 41 ¶¶ 36-37; 55 ¶ 3.

The Court previously discussed Defendant's redemption obligations and the relevant redemption window in its Prior Order:

> In order to redeem the property, the owner exercising the redemption right must pay amounts due to the HOA, as well as interest and costs, and pay the purchase

price to the purchaser. *DTND Sierra Investments LLC v. CitiMortgage, Inc.*, No. SA-12-CV-80-XR, 2012 WL 1711738, at *6 (W.D. Tex. May 15, 2012). Defendant states it has paid the amounts due to the HOA. [Docket no. 40-16, Exhibit M, p. 2 ¶ 7.] Defendant, however, has not paid the purchase price to Plaintiff and alleges the amount is unknown. [*See* docket no. 40-1, Exhibit A, p. 3 ¶ 10.] Courts have recognized that in many instances, "the amount for some of the items for which section 209.011 requires reimbursement for redemption might be known only by the purchaser." [*Laguan v. Lloyd*, 493 S.W.3d 720, 724 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also*] Tex. Prop. Code § 209.011(e)(2)(C), (E) (requiring reimbursement of amount of deed recording fee and taxable costs incurred in a proceeding brought in forcible entry and detainer actions). "The statute implicitly acknowledges this by allowing the [redeeming] owner to request an itemization of costs from the purchaser and extending the redemption period until 10 days after the purchaser responds." [*Laguan*, 493 S.W.3d at 724 (citing § 209.011(m))].

Under § 209.011(m) the redemption period is extended if the owner mails notice by certified mail before the last day of the 180-day window of its wish to redeem the property. [*See* Tex. Prop. Code § 209.011(m).] In that situation, the redemption period is extended 10 days from the date the HOA or foreclosure purchaser provides the owner with notice of the amounts that must be paid to redeem the property. [*See id.*;] *WaiWai, LLC v. Alvarado*, [No. 03-13-0054-CV], 2014 WL 6844934, at *3 (Tex. App—Austin Nov. 26, 2014, no pet.). Plaintiff purchased the property on December 2, 2014. Plaintiff acknowledges on April 13, 2015 U.S. Bank sent a letter requesting the amount to redeem—within the 180 day redemption period. Plaintiff further acknowledges U.S. Bank made two additional redemption attempts on May 22, 2015 and June 3, 2015. [*See* docket no. 40-16, Exhibit M-9.] According to Plaintiff, [it] did not comply with U.S. Bank's request because Defendant's ownership interest was not reflected in the chain of title . . . . [*See id.*]

Docket no. 47 pp. 10-11. Plaintiff still has not provided support for its assertion that U.S. Bank was required to prove its chain of title in order to trigger Plaintiff's obligation to provide Defendant with the redemption amounts.[18] Once U.S. Bank mailed its first letter on April 13, 2015, it complied with the initial requirements of § 209.011.[19] As the Court previously

---

[18] Counsel for the HOA provided the statutory redemption amounts that U.S. Bank was required to pay to the HOA upon receipt of a practically identical request from U.S. Bank's counsel. *See* docket no. 40-16, Exhibits M-1 & M-4.

[19] To the extent Kingman contends that U.S. Bank's April 13, 2015 letter did not adequately describe U.S. Bank's interest in the Property, U.S. Bank's May 22, 2015 request was also sent to Kingman within the statutory 180-day window for redemption, and that letter clearly identified

concluded, the redemption period was extended indefinitely because the statute provides an extension after the owner or lienholder notifies the purchaser of its intention to redeem the property and requests an itemization of the amount owed and required to redeem the property.[20] *See* § 209.011(m). Here, because Defendant sent notice and Plaintiff did not provide the necessary redemption amounts, U.S. Bank complied with its obligations and the redemption period continues to be extended until ten days after such information is provided by Kingman.

### e. *Conclusion*

For the reasons set forth above—and notwithstanding the fact that it is unclear whether LaSalle's 2008 Foreclosure Sale was rescinded—the Court concludes that (i) Defendant was, at the time of the HOA Foreclosure Sale, either the Property's "owner" or a "lienholder of record" under Texas Property Code § 209.011, and thus, (ii) Defendant held a statutory right to redemption. Additionally, the Court also concludes that (iii) U.S. Bank has complied with its initial redemption obligations under § 209.011, (iv) U.S. Bank is entitled to a quote of the statutory redemption amounts from Kingman, and (v) U.S. Bank's redemption period remains open and continues to be extended.

Finally, to the extent the parties seek clarification regarding U.S. Bank's *present* interest in the Property, the Court concludes—and U.S. Bank agrees—that its present interest is not ownership. *See* docket no. 50 p. 7. Instead, U.S. Bank presently has the right to acquire an ownership interest in the Property through statutory redemption.

---

U.S. Bank as the "successor to LaSalle Bank, N.A. Trustee's interest in the Property." *See* docket no. 40-16, Exhibit M-2.

[20] At his deposition, Mr. Disanti admitted that the substance of U.S. Bank's letters "put [Kingman] on notice that U.S. Bank [was] claiming that it is entitled to the redemption quote." Docket no. 40-16, Exhibit M-7 at 51:18-21.

### 2. Plaintiff Kingman's Interest in the Property

In its Prior Order, the Court stated that "Defendant's ownership of the property is subject to Plaintiff's lien over which Defendant has a statutory right of redemption." Docket no. 47 p. 16. Plaintiff's alternative Motion to Clarify asks the court to "specify each party's interest in . . . the Property," as "the Court seems to suggest that both parties are the rightful owner of the Property" and "neither party has contended that Plaintiff is a lienholder." Docket no. 49 ¶¶ 18-20. As discussed above, the Court has concluded that U.S. Bank does not *presently* have an ownership interest in the Property. Further, U.S. Bank does not oppose Plaintiff's "request that the Court clarify the reference to Kingman as a lienholder." Docket no. 50 p. 7.

After again reviewing the parties' filings and the record, the Court agrees that its Prior Order should be clarified with respect to Plaintiff's present interest in the Property. The interest obtained by Kingman at the HOA Foreclosure Sale was not a lien, but was instead a fee simple interest. Docket nos. 49 ¶ 18; 50 p. 7. However, Kingman's ownership interest in the Property following the HOA Foreclosure Sale, as detailed above, is subject to U.S. Bank's statutory right of redemption.

## B. Quiet Title and Declaratory Relief Claims

The Court now addresses U.S. Bank's Motion to Alter or Amend the Prior Order (docket no. 51). Here, Plaintiff and Defendant agree that Kingman obtained an interest in the Property at the HOA Foreclosure Sale. *See, e.g.,* docket no. 50 p. 7. However, at issue is whether the Court should set aside the subsequent conveyances of the Property made by Kingman and other parties, and if so, whether that can be done via U.S. Bank's quiet title claim and request for declaratory relief.

1.  Quiet Title Claim vs. Trespass-To-Try-Title Claim

In its Motion to Alter or Amend, Defendant U.S. Bank argues its quiet title claim is the appropriate legal vehicle to set aside the subsequent conveyances of the Property at issue. *See* docket no. 51 § III. In the Prior Order, the Court concluded that a trespass-to-try-title action was the appropriate means for Defendant to seek adjudication of rival claims of title to the Property. Docket no. 47 p. 17. The Court's prior conclusion was premised in part on its determination that U.S. Bank was the "rightful owner" of the Property. *See* docket no. 47 p. 17. As discussed above, the Court has amended that portion of its prior conclusions and has now determined that Defendant's present interest in the Property is not ownership, but instead the right to redeem the Property pursuant to Tex. Prop. Code § 209.011. For that reason, the Court's prior determination with respect to the proper legal vehicle for Defendant's challenge to Plaintiff's subsequent conveyances must be reexamined.[21]

Under Texas law, a suit seeking solely to cancel a deed is not governed by the trespass-to-try-title statute because it does not immediately determine title to or possession of the property. *See Wilhoite v. Sims*, 401 S.W.3d 752, 760 (Tex. Civ. App.—Dallas 2013, no pet.).[22] A request to invalidate a deed "is clearly distinguishable from the claim of right to title and possession of real property, which is the Sine qua non of a suit in trespass to try title."

---

[21] Plaintiff does not respond to the merits of Defendant's argument, except to note that a trespass-to-try-title claim would be the correct vehicle to set aside Plaintiff's subsequent chain of title in the event the Court again arrived at the conclusion that Defendant has a present ownership interest in the Property. Docket no. 55 ¶¶ 3-5.

[22] In *Wilhoite*, the Texas Court of Appeals determined the appropriate claim for a plaintiff to use in order to invalidate a voidable deed that was obtained by fraud. 401 S.W.3d at 759-60. Because the trial court merely canceled the deed without ordering conveyance of the property, the court of appeals determined that a trespass-to-try-title claim was not necessary. *Id.* at 760. The court of appeals concluded that the trial court had not erred in declaring the deed cancelled and void based on Plaintiff's declaratory judgment, quiet title and fraud claims. *Id.*

*Tompkins v. Holman*, 537 S.W.2d 98, 99 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.); *see also Standard Oil Co. of Tex. v. Marshall*, 265 F.2d 46, 50 (5th Cir. 1959) (providing that maintenance of a trespass-to-try-title action requires "a present legal right to possession"). As discussed above, the Court has now concluded that U.S. Bank does not have the *present* right to title and possession. *See* Section III.A.1.e, *supra*. Instead, U.S. Bank is requesting the right to ultimately obtain title to the Property *in the future* through § 209.011's redemption process, and as part of that process, is seeking cancellation of subsequent conveyances based on the transfer prohibition in § 209.011(c). *Id.* For that reason, the Court concludes that U.S. Bank need not utilize a trespass-to-try-title claim in seeking to invalidate the subsequent conveyances.

Whereas a trespass-to-try-title action determines present title and/or possession of the property, a suit to quiet title is an equitable remedy that clarifies ownership by removing clouds over the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied). A quiet title claim permits "the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citation omitted). Here, Defendant seeks to invalidate allegedly unlawful conveyances that have hindered its ability to exercise its rights with respect to the Property. Accordingly, the Court finds that U.S. Bank may seek invalidation of the subsequent conveyances via its quiet title claim and associated request for declaratory relief.

### 2. U.S. Bank's Quiet Title and Related Declaratory Relief Claims

In its May 9, 2016 amended counterclaims and third-party claims, U.S. Bank added Third-Party Defendants Loescher and NRL to the lawsuit, and asserted quiet title claims against

Loescher and NRL. Docket no. 22 ¶¶ 51-56; 66-71. U.S. Bank's claims request that the Court declare the conveyances to Loescher and NRL invalid and void. *Id.*

"The elements of the claim for relief to quiet title are (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The effect of a suit to quiet title is to declare invalid or ineffective the opposing party's claim to title. *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The party seeking to quiet title has the burden of supplying the proof necessary to establish its superior equity and right to relief. *See Browning v. PHH Mrtg. Corp.*, No. CIV. A. H-12-0886, 2013 WL 3244094, at *6 (S.D. Tex. June 26, 2013); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387-88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Hahn*, 321 S.W.3d at 531.

U.S. Bank also seeks separate declaratory relief related to its quiet title claim pursuant to the Federal Declaratory Judgment Act. *Id.* at ¶¶ 66-71. But "the FDJA does not create substantive rights" and instead "is merely a procedural device that enhances the remedies available to plaintiffs in federal court." *Kingman Holdings, LLC v. IMortgage.com, Inc.*, No. SA-15-CV-102-XR, 2015 WL 1279710, at *4 (W.D. Tex. Mar. 20, 2015) (internal quotations omitted); *Rodriguez v. Bank of Am., N.A.,* No. SA–12–CV–00905–DAE, 2013 WL 1773670, at *12 (W.D. Tex. Apr. 25, 2013). Accordingly, the fate of U.S. Bank's declaratory judgment claims regarding the validity of the conveyances to Loescher and NRL will rise and fall with the fate of U.S. Bank's related quiet title claims. *See Kingman Holdings*, 2015 WL 1279710, at *4.

### a. *U.S. Bank's Interest in the Property*

A party seeking to quiet title must demonstrate "right, title, or ownership of the property with sufficient certainty to warrant judicial interference." *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W. 3d 561, 567 (Tex. App.—Amarillo 2013, pet. denied) (citing *Ellison v. Butler*, 443 S.W.2d 886, 888-89 (Tex. Civ. App.—Corpus Christi 1969, no writ)). The "holder of the feeblest equity" in the property may seek to quiet title and may do so to "remove from [its] way to legal title any unlawful hindrance having the appearance of a better right." *Montenegro*, 419 S.W. 3d at 567; *Hahn*, 321 S.W.3d at 531.

As discussed above, the summary judgment evidence establishes that U.S. Bank is entitled to exercise its statutory right of redemption pursuant to Texas Property Code § 209.011 because it had the rights of either an "owner" of the Property or a "lienholder of record" at the time of the HOA Foreclosure Sale. *See* Section III.A.1, *supra*. Thus, the Court concludes that U.S. Bank has rights in the Property such that it may properly seek to quiet title.

### b. *Cloud of Title by Third-Party Defendants*

A cloud on title exists when an outstanding claim or encumbrance affects or impairs the claiming party's right of title to the property. *See Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied); *Essex Crane*, 371, S.W.3d at 387-88. A cloud on title can include "any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of the true owner, the invalidity of which would require proof." *Svoboda v. Bank of Am., N.A.*, 964 F. Supp. 2d 659, 673 (W.D. Tex. 2013).

U.S. Bank's enforcement of its redemption rights is dependent on Kingman executing and delivering to U.S. Bank a deed transferring the Property after the redemption payments are

made. *See* Texas Property Code 209.011(f) (requiring the purchaser of the property at a homeowners association foreclosure sale to convey the property to the lot owner after redemption). Here, five conveyances of the Property following the HOA Foreclosure Sale appear to cloud U.S. Bank's right to obtain title from Kingman upon redemption: one conveyance from Kingman to Ohio Gravy; two conveyances to Mimas; a conveyance to Loescher; and a deed of trust from Loescher in favor of his lender, NRL. *See* Section I.A, *supra*. The Court concludes that those conveyances affect or impair U.S. Bank's ability to exercise its redemption rights, as each transaction impacts Kingman's ability to convey the Property once U.S. Bank exercises its right of redemption.

### c. *Invalidity of Kingman's Subsequent Conveyances*

U.S. Bank argues that because the redemption period remained open at the time of the conveyances between Kingman, Ohio Gravy, Mimas, Loescher and NRL, those transactions are invalid and in violation of the Texas Property Code. U.S. Bank's argument is rooted in Texas Property Code § 209.011(c), which states as follows:

> A person who purchases property at a sale foreclosing a property owners' association's assessment lien may not transfer ownership of the property to a person other than a redeeming lot owner during the redemption period.

*Id.*; *see also WaiWai*, 2014 WL 6844934, at *2 ("The foreclosure purchaser may not transfer ownership of the property during the redemption period").

As discussed above, the Court has concluded that U.S. Bank's statutory redemption period has remained open since its April 13, 2015 request to Kingman for the Property's redemption amounts. *See* Section III.A.1.d, *supra*. As a result, since that date, Kingman has only been permitted to convey the Property to the "redeeming lot owner." Notwithstanding that fact, Kingman ostensibly conveyed the Property to Ohio Gravy—an entity under common control—

on June 25, 2015, and at that time, Kingman was aware that U.S. Bank was attempting to exercise redemption rights.[23] *See* docket nos. 40-17; 40-16, Exhibit M-7 at 52:11-17. Ohio Gravy attempted to convey the Property to Mimas on February 23, 2016 (*see* docket no. 40-20), and Mimas then conveyed its purported interest in the Property to Loescher on March 4, 2016 (*see* docket no. 40-21). Also on March 4, 2016, Loescher granted NRL a security interest in the Property through a deed of trust. *See* docket no. 40-22.

Kingman's purported conveyance to Ohio Gravy (and attempted conveyance to Mimas) occurred during U.S. Bank's redemption period and violated § 209.011(c)'s express prohibition against third-party transfers. Under Texas law, contracts—including those involving conveyances of property—that are made in violation of a statute are illegal and void. *City of Denton v. Municipal Admin. Servs., Inc.*, 59 S.W. 3d 764, 769-70 (Tex. App.—Ft. Worth 2001, no pet.); *McCreary v. Bay Area Bank & Trust*, 68 S.W.3d 727, 733 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Wilson v. Calhoun Country*, 489 S.W.2d 393, 397 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.). Accordingly, Kingman's (i) purported conveyance to Ohio Gravy and (ii) attempted conveyance to Mimas were invalid and void.

Moreover, the other subsequent conveyances resulting from Kingman's link in the chain of title, including those made between Ohio Gravy, Mimas, Loescher, and NRL, are also tainted by Kingman's violation of § 209.011(c) and are similarly void. Each subsequent grantee had constructive notice of U.S. Bank's claimed redemption rights and the dispute over the Property's title through notices of lis pendens filed by U.S. Bank and by Kingman. *See* docket nos. 40-14 &

---

[23] Kingman then again attempted to convey the Property to Mimas on December 17, 2015. *See* docket no. 40-19. Kingman admits that its second deed to Mimas was a mistake. *See* docket no. 40-16, Exhibit M-7 at 65:4-21.

40-18. Under Texas Law, "[a] filed lis pendens is constructive notice of the underlying lawsuit, and a prospective buyer is on notice that [it] acquires any interest subject to the outcome of the pending litigation." *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Because "a purchaser of land pendente lite stands in no better attitude than [its] vendor," the conveyances that occurred subsequent to Kingman's attempted transactions are also invalid and void. *King v. Tubb*, 551 S.W.2d 436, 443-44 (Tex. Civ. App.—Corpus Christi 1977, no writ).

### d. *Equitable Considerations*

A suit to quiet title is equitable in nature, and because the Court will be invalidating conveyances involving entities or individuals other than Kingman, the Court will also briefly consider equitable considerations.

As an initial matter, Loescher and NRL—the only other entities or individuals claiming *current* property rights through Kingman's purchase—were named as parties to this action. *See* docket no. 22. Each was served with U.S. Bank's pleadings, and as mentioned above, the clerk has entered defaults as to both Loescher and NRL. *See* docket nos. 33 & 34. Both had an opportunity to oppose U.S. Bank's quiet title claim and chose not to respond in this action.[24] Further, it was not necessary for U.S. Bank to name Ohio Gravy or Mimas as parties, because under Texas law, "[o]nly persons claiming a present interest in land that constitutes a cloud on title are necessary parties to a quiet title suit, even if a result of the suit voids a conveyance under which they once claimed, but no longer do so." *Hickey v. Henry*, No. 06-97-109-CV, 1998 WL 34344897, at *4 (Tex. App.—Texarkana Aug. 26, 1998, no pet.); *see also Outlaw v. Bowen*, 285 S.W.2d 280, 284 (Tex. Civ. App.—Amarillo 1955, writ ref'd n.r.e.).

---

[24] The Court has not considered the other remedies that Loescher and NRL may have available, if any, should the Court declare their respective alleged interests in the Property null and void.

Finally, as discussed above, Ohio Gravy, Mimas, Loescher, and NRL all had actual and/or constructive notice of U.S. Bank's claimed interest. *See* Sections I.A & III.B.2.c, *supra*. First, Ohio Gravy's sole member and manager—Mark Disanti—admitted to having actual knowledge of U.S. Bank's claim to redemption at the time the Property was conveyed to Ohio Gravy. *See* docket no. 40-16, Exhibit M-7 at 52:11-17 & 57:10-13. Second, Kingman and/or U.S. Bank had filed notices of lis pendens regarding the dispute of title before each of the conveyances between Kingman, Ohio Gravy, Mimas, Loescher and NRL. *See* docket nos. 40-14 & 40-18. "The ultimate effect of a lis pendens is to deprive either party in the litigation of the ability to alienate the property in dispute" and, as discussed above, each subsequent grantee was bound by the result of the pending litigation. *Sommers for Alabama and Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 756 n.17 (Tex. 2017); *see also Gantt*, 246 S.W.3d at 303. Accordingly, neither Loescher nor NRL should be blindsided by this result.

### e. *Conclusion*

The record demonstrates that U.S. Bank has satisfied each of the elements required for its quiet title claim, and the Court concludes that U.S. Bank it is entitled to declarations quieting title on the Property and declaring invalid the conveyances to Loescher and NRL.

### 3. Kingman's Quiet Title Claim and Request for Related Declaratory Relief

In its Original Petition, Kingman asserted its own quiet title claim against U.S. Bank and sought a declaration that "Plaintiff [is] the sole owner of the Property in fee simple, without any liens or other encumbrances, and declaring all deeds of trusts relating to the Property, or subsequent assignments, as void and extinguished."[25] *See* docket no. 1-1 pp. 15-16, ¶¶ 20, 24-25.

---

[25] Kingman requested that all "subsequent assignments" of the Property be declared "void and extinguished" months before Kingman itself (among others) purportedly conveyed rights to the Property.

U.S. Bank asserts that Kingman "abandon[ed] . . . its claims" (*see* docket no. 40 p. 20), and requests that the Court grant summary judgment as to Kingman's quiet title and declaratory relief claims, "in light of U.S. Bank's statutory redemption rights." *See* docket no. 40 pp. 2, 11, 20.

In its Prior Order, the Court concluded that the summary judgment evidence demonstrated that Kingman had satisfied the first two elements of its quiet title claim, and the Court's prior conclusion as to those elements has not changed. *See* docket no. 47 p. 12. First, the Court continues to believe that Kingman's purchase of the Property at the HOA Foreclosure Sale created an interest sufficient such that Kingman could assert a claim for quiet title. *See Mortg. Elec. Registration Sys., Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at *4 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied) (holding that plaintiff's allegation that "she owns the property by virtue of her recorded deed" was a sufficient interest in the property for purposes of quiet title action). The Court also finds that Kingman's interest in the Property "is affected by a claim" by U.S. Bank, such that the second element is also fulfilled. *Johnson*, 2011 WL 6938507, at *3.

But Kingman cannot satisfy the final element of its quiet title claim. Kingman's claim (and associated request for declaratory relief) would necessitate findings that would be factually and legally inconsistent with other conclusions in this Memorandum and Order. In order to succeed on a claim to quiet title, Kingman must prove that it has superior title to the Property over U.S. Bank. *See Browning*, 2013 WL 3244094, at *6. As discussed above, the Court has concluded U.S. Bank had a valid interest in the Property at the time of the HOA Foreclosure Sale, either as an "owner" or a "lienholder of record." *See* Sections III.A.1.a-c, *supra*. For that reason, the Court also concluded that U.S. Bank holds a right of redemption under Texas Property Code § 209.011 and that its redemption period is still open. *See* Section III.A.1.d-e,

*supra.* Finally, as discussed in Sections III.A.1.e & III.A.2, *supra*, the Court has determined that Kingman's interest in the Property is subject to and subordinate to U.S. Bank's right to redeem. Accordingly, the summary judgment evidence relied on for the Court's prior conclusions also precludes the Court from finding that U.S. Bank's claim "is invalid or unenforceable" or that Kingman's interest in the Property is superior to that of U.S. Bank.

Because the Court cannot enter a judgment quieting title for Kingman "as the sole owner of the Property in fee simple, without any liens or other encumbrances," as Kingman has requested (*see* docket no. 1-1 ¶ 25), Defendant U.S. Bank is entitled to summary judgment on Kingman's quiet title claim. Finally, because Kingman's request for declaratory relief seeks an identical declaration as the one requested as part of Kingman's quiet title claim (*see id.* at ¶ 24), U.S. Bank is also entitled to summary judgment as to Plaintiff's declaratory judgment claim.

## C. Fees and Costs

In U.S. Bank's Amended Counterclaims filed on May 9, 2016, U.S. Bank prayed for various additional forms of relief, including attorneys' fees and costs, rents on the Property, and disgorgement of profits related to the Property. *See* docket no. 22 ¶¶ 45-46 & pp. 18-19. In U.S. Bank's more recent Motion for Summary Judgment and Motion to Alter or Amend, U.S. Bank appears to limit the monetary relief it is seeking to attorneys' fees and costs. *See* docket nos. 40 p. 21; 51 pp. 9-10.

In any event, the Court does not believe it is proper to award such relief as part of this Order. Although the Court is aware that § 209.011 may provide for attorneys' fees or costs under certain circumstances, the issue has not been sufficiently briefed by the parties. Should U.S. Bank believe it is entitled to fees or costs under § 209.011 or on any other basis, it will be given

an opportunity to move for such relief, and Kingman will be provided an opportunity to oppose any such motion.

## IV. CONCLUSION AND ORDER

Plaintiff Kingman's Motion to Alter or Amend Judgement, or in the Alternative, Motion to Clarify (docket no. 49) and Defendant U.S. Bank's Motion to Alter or Amend Order (docket no. 51) are each **GRANTED IN PART** and **DENIED IN PART**, to the extent described in the preceding analysis. The Court's Prior Order and Judgment (docket nos. 47 & 48) are hereby **VACATED**.

Defendant U.S. Bank's Motion for Summary Judgment (docket no. 40) is **GRANTED IN PART** and **DENIED IN PART**, to the extent set forth in this Memorandum and Order.

**IT IS FURTHER DECLARED** that:

(i)     U.S. Bank is entitled to statutory redemption of the Property under Section 209.011 of the Texas Property Code, and U.S. Bank's right to redeem the Property is subject to tender to Kingman of amounts under Section 209.011(e)(2) of the Texas Property Code;

(ii)    Kingman's and any alleged successors' or assigns' fee simple interest in the Property is subordinate to U.S. Bank's right to redeem the Property under Section 209.011 of the Texas Property Code;

(iii)   All conveyances originating from Kingman's chain of title as to the Property are invalid and of no force and effect, including:

a.   The General Warranty Deed with Vendor's Lien in Favor of Third Party dated March 4, 2016, executed by Mimas, as grantor, in favor of Loescher, as grantee, recorded in the real property records of Bexar County, Texas, at Book 17730, Page 103; and

b.   The Deed of Trust dated March 4, 2016, executed by Loescher, as grantor, in favor of NRL, as Lender, recorded in the real property records of Bexar County, Texas at Book 17730, Page 106.

**IT IS FURTHER ORDERED** that within forty (40) days of final judgment issuing in this action, Kingman is required to provide U.S. Bank with the redemption amounts specified by Section 209.011(e)(2).

**IT IS FURTHER ORDERED** that Defendant U.S. Bank is entitled to summary judgment as to Plaintiff Kingman's claims against U.S. Bank, and that Kingman take nothing as to those claims.

**IT IS FURTHER OREDERED** that, in the event U.S. Bank still believes it is entitled to attorneys' fees or costs, U.S. Bank shall—within fourteen (14) days of the date of this Order—move for such relief. Any such motion shall be made in accordance with the terms and conditions of Local Rule CV-7(j)(1) and should include all grounds and support for the request. Pursuant to Local Rule CV-7(j)(2), should U.S. Bank file such a motion for fees and costs, Kingman may file an objection to the motion within fourteen (14) days of the date on which U.S. Bank's motion is filed.

**IT IS FURTHER ORDERED** that final judgment will not issue in this action until after (i) all of U.S. Bank's causes or claims for relief that were not addressed in this Order are formally resolved or withdrawn, and (ii) the Court has resolved any motions for fees or costs.

It is so **ORDERED**.

**SIGNED** this ⟨handwritten⟩ day of March, 2018.

_____
ORLANDO L. GARCIA
Chief United States District Judge